**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
Phone: (410) 962-4953
Fax: (410) 962-4953

February 10, 2021

LETTER TO ALL COUNSEL OF RECORD

Re:     *Snodgrass v. Esper*
        Civil No.: 1:18-cv-00450-SAG

Counsel:

This matter was referred to me for discovery and all related scheduling. (ECF No. 48). Now pending before the Court is Plaintiff's Motion for Sanctions (ECF No. 97) and Motion to Compel (ECF No. 100), and Defendant's Motion to Compel (ECF No. 99). The Court granted both parties' motions for extension of time to respond, (ECF Nos. 107; 108), and the parties filed timely responses to each motion. (ECF Nos. 109; 110; 111). The issues are fully briefed and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For reasons more fully explained below, Plaintiff's Motion for Sanctions (ECF No. 97) is DENIED, Defendant's Motion to Compel (ECF No. 99) is GRANTED, and Plaintiff's Motion to Compel (ECF No. 100) is DENIED in part and GRANTED in part.

## I.     Background

In this case, Plaintiff alleges violations of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 701, *et seq.*, during Plaintiff's tenure as a civilian employee with the U.S. Department of the Army. (ECF No. 1 at 1). During the relevant time period, the Army employed Plaintiff as an Information Technology Specialist and Program Analyst in various offices. *Id.* at 4–6. The essence of Plaintiff's complaint details Defendant's discrimination due to Plaintiff's medical conditions and Defendant's failure to provide reasonable accommodations, namely teleworking opportunities. *Id.* at 1–2.

## II.    Plaintiff's Motion for Sanctions

Plaintiff's Motion for Sanctions is derived from Federal Rules of Civil Procedure 26 and 37, which govern discovery related sanctions. Specifically, Plaintiff seeks attorneys' fees and costs. (ECF No. 97 at 12). In the Fourth Circuit, district courts determining whether to sanction a party under Rule 37 must consider four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would

have been effective." *Anderson v. Found. for Advancement, Educ. & Employ. of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998); *Paradyme Mgmt., Inc. v. Curto*, 2018 WL 9989656, at * 7 (D. Md. June 11, 2018).  "The most severe Rule 37 sanctions must be available in appropriate cases, however, 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Opportunities Dev. Grp., LLC v. Andruss*, 2015 WL 2089841, at *6 (E. D. Va. Apr. 30, 2015) (quoting *Natl. Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)).  In every case, district courts enjoy wide discretion when determining the appropriateness of sanctions for discovery violations. *See Hartford Fire Ins. Co. v. Leader Const. Co.*, 176 F.R.D. 202, 205 (E. D. N.C. 1997).

As background, the instant motion stems from Defendant's document production in response to Plaintiff's January 2019 Rule 34 requests.  (ECF No. 97 at 1).  In October 2019, Defendant produced a large volume of data.[1]  On August 7, 2020, this Court conducted a conference call and ordered Defendant to "conduct an additional search of the [October 2019] production based upon Defendant's good faith attempts to limit it to responsive, relevant documents," and "produce such to Plaintiff."  (ECF No. 75).  Defendant then produced a culled-down version of the October 2019 production on October 5, 2020.[2]  On December 14, 2020, Defendant produced a third, further culled-down production on December 14, 2020.[3]

In short, Plaintiff argues that "approximately 98% of the documents initially produced were unresponsive to Plaintiff's requests, and the responsive documents were only ultimately produced over a year and nine months after they were originally due, at the close of discovery, and without meaningful opportunity to digest and employ them during" Plaintiff's depositions.  (ECF No. 97 at 2).  Defendant responds that it did not agree to undertake a review for responsiveness in light of Plaintiff's overbroad and disproportionate search proposal, Defendant produced documents in the manner in which they are kept in the usual course of business, and any delay associated with the October 2019 production is attributable to Plaintiff."  (ECF No. 110 at 13–19).

Considering the aforementioned factors, Defendant's conduct does not rise to the level outlined by the Fourth Circuit as to require the imposition of sanctions.  The voluminous results of Defendant's October 2019 production were foreseeable in light of the overly-broad search terms Plaintiff insisted Defendant implement.  (ECF No. 110 at 6–7).  Indeed, Plaintiff's request to conduct a search with no date parameters and for more than twenty custodians could only be expected to produce such a large amount of data.  Plaintiff cannot rebuff Defendant's reasonable limitations designed to limit the search results to relevant documents and then turn around to place the burden of narrowing the large production squarely on Defendant.

---

[1] The parties dispute the size of this production.  Defendant references Bates stamps to count 425,930 pages (ECF No. 110 at 2), while Plaintiffs suggest the number is closer to 1.37 million pages.  (ECF No. 97 at 3).

[2] Again, the parties disagree on the size of this reduced production.  Defendants suggest the October 2020 production totaled 103,247 pages (ECF No. 110 at 12) while Plaintiffs contend it is as much as 267,010 pages.  (ECF No. 97 at 4 n.4).

[3] The final production ranges somewhere between 7,664 pages (ECF No. 110 at 12) and 28,258 pages (ECF No. 97 at 5).

To the extent that Plaintiff was prejudiced by the October 2019 production, such prejudice was cured by this Court's order directing Defendants further limit and reproduce relevant and responsive documents. There being no evidence of bad faith or a need to deter this particular sort of behavior, the Court finds no basis to sanction Defendant. As such, Plaintiff's Motion for Sanctions (ECF No. 97) is DENIED.

### III.   Motions to Compel

#### A.   Defendant's Motion

Plaintiff has withheld 266 documents on the basis that "each document represents communications between [Plaintiff] and [Plaintiff's] union representatives concerning actual or potential grievances, personnel policies and practices, general conditions of employment, and proposed disciplinary and adverse actions." (ECF No. 109 at 2). Defendant seeks to compel Plaintiff's production of these documents asserting that this Court "should decline Plaintiff's invitation to create a union-grievant or union-employee privilege" because "[t]here is no precedent in the Fourth Circuit or District of Maryland that recognizes" such a privilege "protecting communications between employees and union representatives from disclosure." (ECF No. 99 at 2). Plaintiff principally relies on the Federal Service-Labor Management Relations Statute ("FLMRA"), 5 U.S.C. §§ 7101 *et seq.*, and argues that "[a]ll relevant authority holds that federal agency management may not compel a federal employee to disclose her communications with her union representatives concerning matters covered by the FLMRA." (ECF No. 109 at 2).

This Court is inclined to agree with Defendant and will not recognize a union-grievant or union-employee privilege. There is a notable absence of authority from courts in this district and the United States Court of Appeals for the Fourth Circuit. Even so, Plaintiff's reliance on the FLMRA and cases in the D.C. Circuit is distinguishable. As Defendant correctly indicates, the FLMRA ensures an employee's union representation during "formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment." 5 U.S.C. § 7114(a)(2)(A). Indeed, as applied in *United States Department of Justice v. Federal Labor Relations Authority*, this section "assures the right and duty of a union to represent employees in *disciplinary proceedings*," so that an employee may make "full and frank disclosure[s] to his or her representative" to obtain "adequate advice and a proper defense." 39 F.3d 361, 369 (D.C. Cir. 1994) (emphasis added). It does not then follow that such protections would be accompanied by a privilege to withhold documents in this Court. *United States Department of Justice* contemplated as much:

> The privilege the Authority recognizes, derived from the section 7114(a) right of an employee to union representation in an investigation, may be good as against management. But it is not good as against the world. The Authority's jurisdiction is limited to labor-management relations. As its counsel agreed at oral argument, *w*hatever privilege the Authority set up in that context would not shield a conversation between an employee and his union representative from disclosure in court. . . .

*Id.* For these reasons, and noting that several courts choose not to recognize a union-employee or union-grievant privilege, this Court declines the opportunity to hold otherwise. *See, e.g., Jenkins v. Bartlett*, 487 F.3d 482, 491 n.6 (7th Cir. 2007), *Boyer v. Rock Twp. Ambulance Dist.*, 2012 WL 1033007, at *3 (E.D. Mo. Mar. 27, 2012); *Parra v. Bashas' Inc.*, 2003 WL 25781409, at *4–5 (D. Ariz. Oct. 2, 2003).

Accordingly, Defendant's Motion to Compel (ECF No. 99) is GRANTED.

### B. *Plaintiff's Motion*

Plaintiff argues that Defendant's counsel—Theodore Haussman—made business decisions regarding Plaintiff's requests for accommodations, time and attendance, and disciplinary action. (ECF No. 100 at 2). As it pertains to this motion, Defendant produced a privilege log with its October 2019 production. After this Court's August 7, 2020 status call, Defendant produced a revised privilege log "containing 662 entries, reflecting approximately 509 communications to, from, or copying Mr. Haussman, and 89 drafts of memoranda or emails." *Id.* In the revised privilege log, Defendant had "removed 187 entries from its prior iteration." *Id.* Defendant produced yet another revised privilege log on November 30, 2020 "removing 11 entries and adding work product designations to almost all entries – and a declaration from [Mr.] Haussman outlining his involvement in Plaintiff's employment." *Id.* at 3–4.

Plaintiff now contends that "a substantial number of the remaining entries appear to concern management or personnel decisions for which legal advice would have limited implications," and requests this Court compel Defendant to produce non-privileged documents, and conduct *in camera* review of a sampling of entries contained in Defendant's privilege log. Defendant responds that the Attorney-Client privilege applies to Mr. Hausman's communications, and that Plaintiff's supervisors sought legal advice as it pertained to Plaintiff's request for accommodations, leave, time and attendance issues, disciplinary action, and government computer restrictions. (ECF No. 111 at 6–12).

The Court will uphold Defendant's privilege log. However, to ensure that Plaintiff's concerns are not without merit, the Court will conduct an *in camera* review of a sampling of Defendant's privilege log—specifically half of those entries Plaintiff enumerates in her motion. (ECF No. 100 at 10). Defendant shall provide every other entry referenced by Plaintiff starting with No. 15 (i.e., Nos. 15, 17, 36, 50, and so on) to my chambers no later than Friday, February 19, 2021. Upon receipt, the Court will review the entries and issue a separate order based on its findings.

Therefore, Defendant's Motion to Compel (ECF No. 100) is DENIED in part and GRANTED in part.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge

cc: The Honorable Stephanie A. Gallagher